In the United States District Court for the Northern District of Florida
Tallahassee Division

**Daniel Francis Sullivan,**
    Petitioner,

vs.                                               Case No. 3:14-mc-64-MCR/EMT

**Elizabeth Ann Sullivan,**
    Respondent.

**Respondent's Memorandum of Law**

Respondent, Elizabeth Ann Sullivan, files this Memorandum of Law in support of her request that the Court deny the Petition for Return of Child to Canada.

### Introduction

Petitioner, a citizen of Canada, and Respondent, a citizen of the United States, met each other while they were both living in Florida in 2006. The parties married and continued to reside in the United States until just prior to the birth of their son in 2011 when they moved to Canada. After years of marital difficulties, Respondent and the child moved back to Florida on July 10, 2013. At the time of the move, Petitioner was unable to care for the minor child due to his admitted problems with drugs and alcohol and was aware that the child's best interest was served by being with his mother as the primary caretaker in Florida. Petitioner consented to the removal of the child. The parties packed all of Respondent's personal belongings as well as everything necessary to care for the minor child, including her portion of the martial furniture and household items, into a crate for shipment to Florida. The move was made not only with the Petitioner's knowledge and consent but with Petitioner's active participation in the dividing and shipping of the household goods to Florida. Six months later, Respondent filed for divorce in Escambia County, Florida. Months later, only after being personally served with the divorce action,

Petitioner had apparent second thoughts and attempted to revoke his consent to the Respondent's move to Florida with the child.

Petitioner filed this Hague Convention action August 22, 2014, seeking an order from this Court directing Respondent to return the child to Canada. Respondent filed her Answer and Affirmative Defenses in which she asserted affirmative defenses, the most significant defense being Petitioner's consent and continued acquiescence. The Court held an evidentiary hearing on September 11, 2014 in which both parties were present.

### *Issues Before the Court*

There is no dispute that the Petitioner consented to the move of D.F.S. to Florida with the Respondent. Equally without dispute is that the Petitioner demanded that "she" [Respondent] come home, to bring [D.F.S.] home, after he learned what "she" [Respondent] was asking for in the dissolution of marriage complaint, and discussed that issue with a divorce lawyer. [Trial Tr. 83:4 to 84:1, September 11, 2014].

Against those uncontroverted facts, there are two issues to be decided by this Court; one legal, one factual.

    1. Whether consent, once given, can be revoked if the person giving the consent has a change of heart.

    2. Whether the consent given by the Petitioner was expressly conditioned, either orally, or in writing, on the Respondent moving back to Canada with the minor child in the event the marriage was not reconciled?

**I. Consent to D.C.F.'s Move to Florida Could Not be Revoked, Triggering the Remedies for International Kidnapping, Based on Change of Heart**

Consent by the petitioner to the removal of a child is a defense to a Hague Convention action. A consensual removal is not a "wrongful" removal under the Convention. *Gonzalez-*

*Caballero v. Mena*, 251 F.3d 789, 793 (9th Cir. 2001). To obtain relief under the Convention, Daniel Sullivan must prove by a preponderance of the evidence that the child was "wrongfully removed or retained within the meaning of the Convention." 22. U.S.C. § 9003(e)(1)(2). The defense of consent must also be proven by a preponderance of the evidence. *Gonzalez-Caballero v. Mena*, 251 F.3d 789, 793 (9th Cir. 2001).

The determination as to whether consent was given is a highly factual one and Courts have expressed that such consent can be proved successfully with relatively informal statements or conduct. *Nichelson v. Pappalardo*, 605 F. 3d 100, 105 (1st Cir. 2010). Because consent requires little formality, courts will look beyond the words of the consent to the nature and scope of the consent keeping in mind any conditions or limitations imposed by the petitioner. *Id.* The district judge's raw fact findings can be reversed only for clear error, *Nicolson v. Pappalardo*, 605 F.3d 100, 105,2010 (1st Cir. Me.2010)(citing *Whallon v. Lynn*, 230 F.3d 450, 454 (1st Cir. 2000).

Consent, once given, cannot be revoked. *Gonzalez-Caballero*, 251 F.3d at 794 (once the Court finds there is consent the inquiry is complete because "even ex post non-acquiescence could not revive the right of return under the Convention"). It stands to reason that if consent could be revoked based on subsequent events, in this case Petitioner's apparent dismay with his Wife's requested relief in the dissolution of marriage, consent would never be a defense. There is, however, no authority supporting a revocation of consent once given. Petitioner's "later change of heart is irrelevant." *Cascio v. Pace*, 992 F.Supp.2d 856 at 866 (N.D. Ill. 2014).

**II. Petitioner's Consent to D.C.F.'s Move Was Not Conditioned on Him Being Returned to Canada if Respondent sought divorce. All discussions concerning the return of the child contemplated "visits," not a move back to Canada.**

The facts here are similar to the facts in *Cascio*. In that case, the mother, a dual citizen of Italy and the United States, and the father, an Italian citizen, resided in Italy for many years with their children. *Id.* at 861. The parties frequently vacationed in the United States near the mother's extended family but in September 2012, after a series of arguments and confrontations, the mother refused to take the children back to Italy. *Id.* at 861-62. The father initially gave his consent to the children's remaining in the United States but later attempted to revoke that consent. *Id.* at 862. While in the United States, the children enrolled in school, made friends, acclimated to their new environment, and the mother found full-time employment. *Id.*

As with the case at bar, the father consented to the children moving to the United States. *Id.* at 865. And, as in the case now before this Court, there was evidence – and the Court so found – the father attempted to revoke that consent. The federal trial court that "… his later change of heart [was] irrelevant, as The Hague Convention does not provide a mechanism for the revocation of consent once given." *Id.* at 866. See also *Gonzalez-Caballero v. Mena*, 251 F.3d 789, 794 (9th Cir. 2001) ("Under the Hague Convention's plain, unambiguous language, consent before the removal and retention *or* subsequent acquiescence extinguishes the right of return.") (Emphasis in original); *In re Kim*, 404 F. Supp. 2d 495, 519 (S.D.N.Y. 2005) (Petitioner's post-consent email was only evidence of "post hoc regret" that does not "revive her right to return under the Convention").

Petitioner has not tried to skirt his responsibilities for these behaviors and has admitted that his issues with marijuana and alcohol prevented him from being a good husband and father. [Trial Tr. 79:15 to 79:18]. His state of mind at the time of the move was such that Petitioner was

not only unable to be the primary caregiver, but also that it was best for his son to live with his mother. Petitioner's own testimony shows that he was aware that he was not doing the things necessary to be a good husband and father. Id., [Trial Tr.81:8 to 81:10]. Petitioner admitted that Respondent was in fear on an evening in which he was at the home highly intoxicated and that the event precipitated her decision to move to Florida. [Trial Tr. 41:4 to 42:6 and 44:4 to 44:10]

Without a doubt, the Petitioner consented to D.C.F. moving to Florida with Respondent. Respondent did not leave with D.C.F. in the dark of night, or without the Petitioner's knowledge and consent. Petitioner knew the difference between a move, and a visit, and knew that his Wife was moving with their son to Florida. He also knew that it was a distant possibility she may never return. This is evidenced by the fact the parties divided household goods, and packed up furniture and clothing for the move of D.C.F. to Florida. [Trial Tr. 46:22 to 46:25; 48:18 to 48:19; 49:2 to 49:5; 50:23; 159:11 to 159:23; 160:10 to 160:24]

The Petitioner does not pretend that he conditioned his consent to that move on D.C.F. being moved back to Canada if the marriage was not reconciled. And, he knew that he did not "control Liz's ultimate conclusion as to whether [he] had or had not gotten [his] act together." [Trial Tr. 78:24 to 79:1.]

All "conditions" that were testified to by both Petitioner and Respondent dealt with the reconciliation of the marriage, not whether D.C.F. moved with his mother to Pensacola, Florida, where they met. The factual record before this Court establishes the rationale for why the Petitioner would have consented to D.C.F. being with his mother, as it showed a lifestyle of drugs, excessive drinking and abusive behavior, that would certainly have caused the Petitioner to believe that D.C.F. was best to live with his mother.

Just as consent would never be a defense if it could be revoked, consent would never be a defense if it could only be established by the Petitioner's admission. Here, the Petitioner admits that consent was given, but seeks to establish that it was conditioned on D.C.F. moving back to Canada even if the marriage was not reconciled. That is, of course, a disputed issue that the Court must resolve through weighing the credibility of the testimony by the parties. Respondent testified there was no such condition placed on the move. Reconciliation of the marriage was conditional but there were no conditions in place on whether D.C.F. was permitted to move with her to Florida.

Looking closely at the Petitioner's own testimony, we find nowhere that Petitioner claimed that he expressly conditioned D.C.F.'s move to Florida on an agreement to move him back to Canada even if his Wife decided that the marriage could not be reconciled. All of Petitioner's testimony regarded planned visits back to Canada by the Respondent and the child surrounding major events and holidays such as the child's birthday and holidays, and he conceded that finances and his schedule delayed those visits. [Trial Tr. 55:25 to 56:9; 63:12 to 63:14]. Petitioner's testimony therefore raises issues *access to and visitation with* D.C.F., but not as to whether Petitioner gave an unqualified consent for D.C.F. to move to Florida with his mother. Petitioner hoped that the mother would move back to Canada, but the critical issue here, the deciding factor, is that the Petitioner knew that it was Liz Sullivan's "ultimate conclusion" as to whether the marriage was reconciled, [Trial Tr. 78:17 to 79:2], and knowing that, he did not say: "If the marriage does not reconcile, then D.C.F. must move back here, without you, and my consent to his move to Florida is conditioned on your agreeing to move him back here whether you move back here or not." Petitioner does not even argue that he placed any such conditions on his consent to D.C.F. moving with his mother to Florida.

Absent showing that his consent to the move was expressly conditioned on a move of D.C.F. back to Canada, the Petitioner cannot establish the removal was "wrongful," he has not met his burden under the Hague Convention. Article 13 of the Hague Convention states this Court is not bound to order the return of the child if Respondent establishes that Petitioner "consented to or subsequently acquiesced in the removal or retention."[1]

The evidence demonstrated that Petitioner first attempted at the end of March to revoke his consent *after and only* after seeking advice from a divorce lawyer. [Trial Tr. 83:4 to 83:8]. He knew three months earlier that his Wife was not moving back to Canada, and yet did not claim "wrongful retention" at that time. The demand to move D.C.F. back to Canada was, without dispute, a reaction by the Petitioner to the relief asked for in the dissolution petition. The following exchange establishes this point:

> Q. And you didn't demand that there be a physical move back to Canada from your son in January, did you?
>
> A. I always wanted D.F.S. to come home.
>
> Q. Well, we're talking about visits versus moves at this particular point. The first time that you demanded that he be physically moved back from Florida to Canada was at the end of March of this year after you got served with the divorce papers and after you sought counsel from a divorce lawyer; is that not true?
>
> A. This is true, after I realized what Liz had done and what she was asking for was when I realized that I needed to do something about it.

[Trial Tr. 83:15 to 84:1.]

This is a critical point. If the consent to the move to Florida was conditioned on D.C.F. being moved back to Canada if the marriage was to be dissolved, the demand would have been made in

---

[1] Petitioner confuses "access to and visitation with" the minor child in Canada to a move back to Canada. No "move back" without the mother was ever discussed. In addition, Petitioner focuses on "habitual residency" and differences between the 11th Circuit and other Courts on that issue. But this case is not about whether "habitual residence" was established after a wrongful taking. The issue is whether consent was expressly conditioned on the move back of the minor child without the mother in the event the marriage dissolved.

January when Ms. Sullivan told him about the dissolution proceedings. There would have been no need for the Petitioner to have sought legal counsel regarding "what she was asking for" in the dissolution. *Id.*

It is important to keep in mind that the decision by this Court is not about visitation rights, or primary residential custody, but whether D.C.F. was kidnapped from Canada. The only factor that could be deemed to have occurred is if the Court were to find that the uncontroverted consent to the move was expressly conditioned upon D.C. F. being returned by a date certain or upon the occurrence of a particular event such as a decision by Respondent to file for divorce. The evidence does not support that conclusion.

Prior to the seeking legal counsel regarding what "she was asking for" in the dissolution petition, Petitioner realized that he was in no condition to be the primary care giver for a two year old child. He had never assumed that role, and admitted to drug and alcohol problems. He further testified that even when he believed he had in fact "gotten his act together" by giving up marijuana and getting a job at the elevator company, that he never even told his Wife that he had been making the changes she said he needed to make. [Trial Tr. 80:16 to 80:20 and 81:8 to 81:10] These facts all support the conclusion that the pretense of a conditional consent to the child living with his mother was only a post-hoc response to Respondent's filing for dissolution and an attempt to re-frame the custody proceedings in the dissolution action.

When Respondent moved to Florida, both parties knew that if they did not reconcile, that the child would continue to live with Respondent, in Florida, until a family law court decided which parent would be best suited for primary residential custody.

## Conclusion

Petitioner's consent for the child to be removed to Florida is evidenced by the testimony at trial relating to the circumstances at the time the consent was given. Petitioner knew he was not in a position to assume the primary care giving role for his two year old son, as he admitted to struggling with drug and alcohol abuse and related personal issues. The factual record shows that the Petitioner made no express conditions on his consent, and that it was after and only after he met with a divorce attorney to review what "she [Liz Sullivan] was asking for" in the divorce complaint, that he demanded that his *Wife[2] and son* move back to Canada. [Trial Tr. 83:4 to 83:9].

There was no discussion of moving D.F.S. back to Canada in the event the marriage was not reconciled and the Wife stayed in Florida. All discussions of a "return" had to do with visits, not moves, back to Canada. Once consent without strings attached was given, it cannot be revoked upon Petitioner's change of heart which stemmed from his dismay over "what she was asking for" in the divorce action. That is precisely the "change of heart" that cannot impact the defense of consent.

The fact that the Petitioner consented to his son moving to Florida with his Wife does not impact the ultimate residency of the minor child. That is an issue for another court to decide. The issue is before this Court is the allegation of international kidnapping, and we would respectfully submit that the totality of the facts do not support that allegation.

---

[2] This is significant in that it shows Petitioner knew that his wife was and should be the primary care giver. He did not want the divorce, and his demand was not just for the return of his son, but "I demanded that she come home..." He had no intent of being the primary care giver, a role he never had. This negates any inference that he expressly conditioned the consent for his son's move to Florida on his son moving back *without his mother* in the event the marriage was not reconciled. The issue was simply not discussed at the time of the consent.

Respectfully submitted,

/s/ Autumn O. Beck
_____

**Autumn O. Beck**
**Autumn O. Beck PLLC**
Florida Bar No.: 497576
127 Palafox Place, Suite 100
Pensacola, Florida 32502
aob@autumnobeck.com
met@autumnobeck.com
Phone: (850) 466-3115


/s/ Edward P. Fleming
_____

**Edward P. Fleming**
**McDonald Fleming Moorhead**
25 W. Government Street
Pensacola, FL 32502
epfleming@pensacolalaw.com
Phone: (850) 477-0660

*Defendant's Attorneys*

## Certificate of Service

I hereby certify that on this 8th day of October, 2014, the foregoing was electronically filed in the United States District Court, Northern District of Florida, Tallahassee Division, by using the CM/ECF system which will send notification of such filing to the following:

*Plaintiff's Attorneys*
**Brett A. Barfield, Esquire**
**Matthew H. Mears, Esquire**
**Holland & Knight LLP**
brett.barfield@hklaw.com
matthew.mears@hklaw.com


/s/ Autumn O. Beck
_____
**Autumn O. Beck**